```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT R. PORTER,             )
                              )   Civil Action No. 04 - 464
                              )
     Plaintiff,               )   Judge Thomas M. Hardiman /
                              )   Magistrate Judge Lisa Pupo
v.                            )   Lenihan
                              )
DAVE BLAKE, Corrections       )
Officer; and BARRY            )   Doc. Nos. 38, 55 and 57
WRIGHT, Corrections           )
Officer,                      )

     Defendants.
```

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is respectfully recommended that the Defendants' Motion for Summary Judgment (doc. no. 38) be granted and the Complaint be dismissed. It is further recommended that the Plaintiff's Motions for Summary Judgment (doc. nos. 55 and 57) be denied.

**II. REPORT**

The Plaintiff, Robert R. Porter, an inmate previously incarcerated at the State Correctional Institution at Greene ("SCI-Greene") located in Waynesburg, Pennsylvania, commenced this action and Civil Action No. 04-465 pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 against defendants correctional officers Donald Blake, Barry Wright and Mark Capozza. These cases have been consolidated at Civil Action No. 04-464 (doc. no. 66). In the Complaint filed at Civil Action No. 04-464, Plaintiff alleges that in mid to late March of 2002, at the State Correctional Institution at Greene in the Special

Management Unit (SMU), Defendants Blake and Wright gave him an opened container of milk that he states contained contaminated Hepatitis C and A blood. Plaintiff further alleges that this contaminated milk caused him to contract Hepatitis in March of 2002. In Complaint at Civil Action No. 04-465, Plaintiff alleges that Defendant Capozza was the Unit Manager and, therefore, responsible for supervising the officers on his unit. He claims that Defendant Capozza is liable because he failed to report the incident by Defendants Blake and Wright.

Plaintiff claims that he exhausted his administrative remedies through Grievance Number 26070. For the reasons set forth below, the Defendants' Motion for Summary Judgment should be granted on the basis that the Plaintiff failed to comply with the Pennsylvania Department of Corrections (DOC) three-step grievance process available to Pennsylvania state prisoners.

### A. Standard of Review

Presently pending is Defendants' Motion for Summary Judgment (doc. no. 38). Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. Rule Civ. Proc. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which

that party will bear the burden of proof at trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986) (party can move for summary judgment by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case.").  The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact.  Once that burden has been met, the non-moving party must set forth ". . . specific facts showing that there is a <u>genuine issue for trial</u> . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law.  <u>Matsushita Elec. Ind. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).  An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).  The inquiry, then, involves determining " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " <u>Brown v. Grabowski</u>, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting <u>Anderson</u>, 477 U.S. at 251-52).  If a court concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted.  <u>Anderson</u>, 477 U.S. at 249-50.

**B. Exhaustion of Administrative Remedies**

The Defendants seek summary judgment against the Plaintiff on the basis of his alleged failure to have exhausted his available administrative remedies as required by the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996). In this regard, through the PLRA, Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. Specifically, the act provides, in pertinent part, as follows.

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The available administrative remedies for Pennsylvania inmates are codified in the Pennsylvania Department of Corrections Policy Statement No. DC-ADM 804-1, entitled "Consolidated Inmate Grievance Review System." *See, e.g.* Mitchell v. Horn, 318 F.3d 523 (2003) (discussing DOC Grievance System).[1] The purpose of the grievance system is to ensure that

---

[1] *See also* 37 Pa. Code § 93.9(a) (1999) (establishing requirement for DOC to establish an inmate grievance system) DOC policies, including the grievance system policy may be accessed on the worldwide web at http://www.cor.state.pa.us/ standards/lib/standards/DC-ADM_804_Inmate_Grievances.pdf.

"every individual committed to [DOC] custody shall have access to a formal procedure through which the resolution of problems or other issues of concern arising during the course of confinement may be sought.  For every such issue, there shall be a forum for review and two avenues of appeal.  The formal procedure shall be known as the Inmate Grievance System."  DC-ADM 804 ¶ V.  The DOC grievance system applies to all state correctional institutions and provides three levels of review: 1) initial review by the facility grievance coordinator; 2) appeal of initial review to the superintendent or regional director; and 3) final appeal to the chief hearing examiner.

Specifically, inmate grievances must be in writing and in the format provided on the forms supplied by the institution.  DC-ADM 804 ¶ (VI)(A)(1)(f).  An initial grievance must be submitted by the inmate to the Facility Grievance Coordinator within fifteen (15) working days after the event upon which the claim is based.  DC-ADM 804 ¶ (VI)(A)(1)(h). Specific procedures for the appeal by an inmate of an unsatisfactory decision on a grievance are also provided.

The United States Court of Appeals for the Third Circuit analyzed the applicability of the exhaustion requirement in 42 U.S.C. § 1997e in Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000) (Bivens action brought by a federal inmate) and Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (civil rights action brought by a state prisoner).  In each of these cases, the Court of Appeals announced a bright line rule that inmate-plaintiffs

must exhaust all available administrative remedies before they can file an action in federal court concerning prison conditions.  In so holding, the court specifically rejected the notion that there is ever a futility exception to section 1997e(a)'s mandatory exhaustion requirement.  <u>Booth</u>, 206 F.3d at 300; <u>Nyhuis</u>, 204 F.3d at 66.  A unanimous Supreme Court affirmed the Court of Appeals' holding in <u>Booth v. Churner</u>, 532 U.S. 731 (2001) where the Court confirmed that in the PLRA Congress mandated exhaustion of administrative remedies, regardless of the relief offered through those administrative procedures.

As stated by the Third Circuit, "it is beyond the power of this court--or any other--to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."  <u>Nyhuis</u>, 204 F.3d at 73 (quotation omitted).  The Supreme Court of the United States reiterated this tenet when it affirmed the Third Circuit's holding in <u>Booth</u>.

Moreover, the Court of Appeals for the Third Circuit recently held that a prisoner's failure to comply with the procedural and substantive requirements of DOC's grievance policy, as set forth in DC ADM 804, results in procedural default, thereby precluding an action in federal court.  *See* <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir. 2004).  In so holding, the Court of Appeals specifically held that failing to

specifically name accused individuals in a grievance amounted to procedural default because the regulations so required.[2]

The United States Supreme Court recently adopted a similar holding in Woodford v. Ngo, ___ U.S. ___, 126 S.Ct. 2378 (June 22, 2006) wherein it held that an untimely "or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's mandatory exhaustion requirement. Woodford, 126 S.Ct. at 2382.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." This Court has described the doctrine as follows: "[A]s a general rule … courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function

---

[2] The relevant regulations provide as follows: "The inmate shall include a statement of the facts relevant to the claim. The inmate should identify any persons who may have information that could be helpful in resolving the grievance. The inmate should also include information on attempts to resolve the matter informally. DC-ADM 804, Part VI.A.1.d.

> effectively without imposing some orderly structure on the course of its proceedings.

Woodford, 126 S. Ct. at 2385-2386 (internal citations, quotations and footnotes omitted).

The Court further noted that "[c]onstruing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas respondent's interpretation would turn that provision into a largely useless appendage. The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodard, 126 S. Ct. at 2387. The Court concluded that the benefits of exhaustion could only be realized if the prison grievance system is given a fair opportunity to consider the claims, which required the grievant to comply with the procedural rules. Woodford, 126 S.Ct. at 2388.

### C. The Plaintiff's Compliance with the Exhaustion Requirement

The Plaintiff's Complaint alleges that Defendants Blake and Wright gave him contaminated milk, which caused him to contract Hepatitis C in March of 2002. He claims that he exhausted this claim through Grievance No. 26070. The record evidence in this action shows Grievance No. 26070 dated "July 13, 02" filed by the Plaintiff, which provides in relevant part as follows.

> I would like to report that I was tested positive for (Hepatitis C)

> while incarcerated in SCI Greene, I have had blood tests while incarcerated at SCI Rockview, and each time said (Blood tests) were found negative for any communicatible [sic] diseases, my health has been put in jeopardy since arriving here and continues to get worse. Thank you.

Exhibit A to doc. no. 39.

On July 22, 2004, Plaintiff's Grievance was rejected as untimely under DOC regulations because it was not submitted within 15 working days after the event in question. Plaintiff filed an appeal wherein set forth the following statements.

> In April 11, 2002, I was told I tested positive for Hepatitis C and A, I didn't have this disease when I was transferred here from SCI Rockview. I don't know how I caught this disease, I was told that food trays are one way to catch Hepatitis A, I still haven't been told how I caught Hepatitis or how long I have had it. I know I didn't have it before being transferred. I can't physically touch anyone, so how could I have caught it, I would like to have this situation investigated, and a determination made or some type of verification of where I caught this disease, and how I caught this disease, it just doesn't seem likely for this disease to all of a sudden happened to me.

DOc. no. 39, Ex. A.

Superintendent Stickman denied Plaintiff's appeal, noting that Grievance No. 26070 (dated July 13, 2002) was clearly outside the time parameter established by DC-ADM 804, because Porter had indicated that the date at issue (when he

learned of his blood test results) was April 11, 2002. Plaintiff's final appeal was denied on the same bases.

### D. Plaintiff Procedurally Defaulted his Claims

In the case at bar, Plaintiff has procedurally defaulted his claims in two major respects. First, by failing to contain any allegation his grievance about any of the Defendants: Blake, Wright or Capozza. Pursuant to the directive set forth by the Court of Appeals for the Third Circuit in <u>Spruill</u>, Porter procedurally defaulted his claims by failing to identify any of these defendants and failing to include any description of the alleged incident of which he complains.

Second, Porter procedurally defaulted his claims by failing to grieve them within the mandatory fifteen day period. His Grievance was denied on this basis by both the Superintendent and the Central Office.

Plaintiff has filed twelve responses to Defendants' Motion for Summary Judgment; two of which he mis-characterized as motions for summary judgment. *See* doc nos. 48, 49, 50, 51, 55, 56, 57, 58, 59, 60, 62 and 65. In these Responses, Plaintiff first makes bald, unsupported statements that he was unaware of Defendants culpability at the time he filed his grievance. However, he provides no evidence to support his claim. Moreover, he is very specific in his complaint that he continually asked Defendants why his milk had tasted funny and remembers them laughing at him and saying, "maybe there was

10

something in it."  He also claims that there is DOC policy applicable to persons housed in restricted housing which pertain to his failure to exhaust his claim.  This Court is unaware of any such procedures.  Moreover, Plaintiff could have requested an extension of time to file his grievance if he so needed.

Plaintiff cannot create a material issue of fact simply by making these vague, unsupported allegations.  In this regard, former Chief Judge D. Brooks Smith (now Circuit Judge for the United States Court of Appeals for the Third Circuit), specifically held that:

> allowing prisoners to avoid the PLRA's exhaustion requirement merely by alleging that they were prevented from doing so would undermine the very purpose of the PLRA. Congress passed the PLRA "largely in response to concerns about the heavy volume of frivolous prison litigation in federal courts." [Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000)]. In Nyhuis, the Third Circuit found that carving a futility exception into the PLRA would frustrate the Congressional purpose to stem the tide of prisoner lawsuits. Id. In addition, the Court noted that such an exception would merely allow clever inmates to plead their way around the PLRA's exhaustion mandate by alleging that exhaustion would be futile. Id. I confront the same problem in the instant case. Adopting a rule that permits prisoners to avoid the exhaustion requirements merely by claiming that they were prevented from filing a grievance would create an exception to the PLRA large enough to swallow the general rule. Based on the Third Circuit's holding that permitting such an exception would undermine Congressional purpose, I

>           refuse to adopt such an exception
>           today.

<u>Gallman v. Horn</u>, Civil Action 99-138J (W.D. Pa.. October 31, 2000) (Mem. Ord. pp. 3-4). Moreover, Plaintiff could have sought an exception to the 15-day rule but did not.

In the absence of any controlling authority to the contrary, this Court is required to follow the directive of the United States Supreme Court and grant the Motion for Summary Judgment due to the Plaintiff's failure to have exhausted his available administrative remedies. *Accord* <u>Scerbo v. Orefice</u> 2006 WL 3762000, *8 (M. D. Pa. Dec. 20, 2006) (holding that claim set forth in Plaintiff's grievance filed over nine months after the alleged incident was procedurally defaulted).

### III. <u>CONCLUSION</u>

For the reasons set forth above, it is respectfully recommended that the Defendants' Motion for Summary Judgment (doc. no. 38) be granted. It is further recommended that the Plaintiff's Motions for Summary Judgment (doc. nos. 55 and 57) be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service of a copy of this Order to file objections to this Order. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

January 16, 2007

LISA PUPO LENIHAN
UNITED STATES MAGISTRATE JUDGE

cc:     Thomas M. Hardiman
        United States District Court Judge

        Robert R. Porter
        DU-6434
        SCI Camp Hill
        P.O. Box 200
        Camp Hill, PA 17001

        Counsel of Record